MARTIN and another executors of ROBERTSON
*against*
SMITH administrator of SMITH late ROBERTSON.

IN ERROR.

1812.
―――――
*Lancaster,*
*Monday,*
May 25.

The testator, after devising one third of the surplus of his estate to his four sons, made the following bequest: "Item. "I will that one "third of the "overplus to "my three "daughters "Margaret Car-"nahan and Eli-"zabeth Smith, "and Mary "Crosher, her "part of that "third to her "children." This is a tenancy in common in the two daughters and the children of the third, and not a joint tenancy.

Where an estate is given to several persons jointly, without any expressions indicating an intention that it shall be divided among them, it must be construed a joint tenancy. But where it appears either by express words, or from the nature of the case, that it was the testator's intention that the estate should be divided, it then becomes a tenancy in common.

In an action by an executor or administrator, the count may conclude "to his damage," without saying "as executor."

THIS was a writ of error to the Common Pleas of *Dauphin* county.

The defendant in error, who was the plaintiff below, married *Elizabeth* the daughter of *William Robertson*, to whom the bequest hereafter stated was made by her father; and upon her death, he took out letters of administration, and brought *account render* against *Martin* and *Robertson*, the executors of the testator, to recover the legacy, agreably to the 1st section of the act of the 21st of *March* 1772. 1 *St. Laws* 631.

The summons was returned served as to *Martin*, and *nihil habet* as to *Robertson;* and the *Narr* in the common way recited the return, and then proceeded to count against *Martin* as bailiff and receiver for the said *Elizabeth*, of the real and personal estate of *William Robertson*, and that he received of the money of that estate 300*l.* of which he had refused to render an account, "to the damage of the said *John Smith*," &c. *Elder* appeared and pleaded *ne unques* bailiff and receiver, and afterwards " fully accounted," upon which issues were joined; and upon the trial, a verdict was taken for the plaintiff for a certain sum, (a) subject to the opinion of the court upon the will of the said *William Robertson.*

The material parts of that will were as follows. The testator, after giving in very inaccurate language, a number of legacies to his different children, proceeded in these terms: " Item. I will that any of my legatees die without a natural " heir, that my bequeathments return into my family to " *whom they please;* and further I also allow my personal

(a) This irregularity appears to have been within the view of an agreement referred to in the opinion of Judge *Yeates.*

" estate either by vendue or otherwise, and then what ready
" money is made, and likewise what bonds or notes are taken
" or due, shall be equally divided among my legatees by
" equal proportion at the discretion of my executors. And
" further I allow that my estate personal or real shall over-
" mount these my bequeathments, that then the overplus
" shall fall to my four sons, whom I now name, *William,*
" *David,* and *Joseph Robertson* two thirds. *Item.* I will that
" one third of the overplus to my three daughters, *Margaret*
" *Carnahan,* and *Elizabeth Smith,* and *Mary Crosher, her*
" *part of that third to her children.*" The question was
whether the last devise was in joint-tenancy or in common;
and the judgment of the Common Pleas was, that it was in
common.

*Elder* and *Hopkins* who argued for the plaintiffs in error,
contended, 1. That it was a joint-tenancy; for which they
cited 2 *Black. Com.* 181, *Lady Shore* v. *Billingsly* (*a*), *Web-
ster* v. *Webster,* (*b*), *Cray* v. *Willis* (*c*), *Willing* v. *Baine* (*d*),
*The Earl of Sussex* v. *Temple* (*e*), *Aylor* v. *Chep* (*f*). 2.
That the *Narr* was defective in not stating a sufficient cause
of action, since an executor could not be bailiff or receiver,
especially a receiver for *A* of the estate of *B;* unless the
case was brought within the act of assembly, which it was
not here. That it was also defective in concluding to the
damage of the plaintiff individually, when the suit was re-
presentative; and that although the writ was against both
executors, and the appearance general, yet the action was
carried on against one only, contrary to the principle of
*M'Cullough* v. *Guetner* (*g*).

*Duncan* for the defendant in error, argued 1. That the
devise in question was a tenancy in common; for which he
cited *Addison's Rep.* 327, *Sheppard* v. *Gibbons* (*h*), 2 *Cruise*
504, 505. 2. That the cause of action was sufficiently stated
to bring the case within the act of assembly;—that in an
action by an executor, the *narr* may conclude to his da-

(*a*) 1 *Vern.* 482.    (*e*) 1 *Lord Ray.* 310.
(*b*) 2 *P. Wms.* 347.    (*f*) *Cro. Jac.* 259.
(*c*) 2 *P. Wms.* 529.    (*g*) 1 *Binn.* 214.
(*d*) 3 *P. Wms.* 115.    (*h*) 2 *Alk.* 441.

mage individually, *Lill. Entr.* 83, 84; and that the course of the action had been agreeable to the established practice, of proceeding against one defendant, where the other had not been found, and where, after an appearance, there had been a *narr* and plea only as to the defendant who was summoned.

TILGHMAN C. J. The first question in this case arises on the will of *William Robertson.* The testator in the first place gives legacies of different amount to his ten children, after which he expresses himself as follows. " *Item.* I will that if " any of my legatees die without natural heir, that my be- " queathments return into my family *to whom they please;* " and further I allow my personal estate either by vendue " or otherwise, and then what ready money is made, and " likewise what bonds or notes is taken and made, shall be " equally divided amongst my legatees by equal proportions " at the discretion of my executors; and further I allow that " my estate personal or real shall overmount these my be- " queathments, that then the overplus shall fall to my *four* " *sons whom I now name, William, David, and Joseph Ro-* " *bertson two thirds. Item. I will that one third of the over-* " *plus to my three daughters Margaret Carnahan, and Eliza-* " *beth Smith, and Mary Crosher, her part of that third to* " *her children.*" It plainly appears from the whole will, that the testator was an ignorant and illiterate man. Whether the devise to his three daughters was in joint-tenancy or tenancy in common, is the point to be decided. When a man is providing for his children by his will, nothing can be more unnatural than an estate in joint-tenancy. It is with good reason therefore that courts of justice have long been disposed to lay hold of slight expressions, in order to make a tenancy in common. I confess that I feel this disposition in my own mind, but it shall never influence me so far as to shake the established rules of property. Where an estate is given to several persons jointly, without any expressions indicating an intention that it should be divided among them, it must be construed a joint-tenancy. But where it appears either by express words or from the nature of the case, that it was the testator's intent that the estate should be divided, it then becomes a tenancy in common. The counsel for the defendants in error have relied on that part of the will, in

which it is said that if any of the legatees die without natural heir, the bequeathment should return to the testator's family, *to whom they please*, that is to say, the legatee dying without issue might devise it to any of the family he pleased. If this provision could be applied to the subsequent devises, it would certainly afford sufficient ground for saying that there could be no joint-tenancy, because there would be an evident intent to take away the right of survivorship; but I agree with the counsel for the plaintiffs in error, who apply these expressions to the prior devises. That is the plainest and most natural construction. The defendants in error say in the next place, that at all events the surplus of the personal estate, after paying debts and legacies, was to be equally divided; but there again I differ from them. The testator's meaning, to be sure, is not very clearly expressed, but I am satisfied he intended that the legacies he had given in the first part of his will, should be paid partly in cash, and partly in notes or bonds in equal proportions at the discretion of his executors; because he speaks of a sale of his personal property at vendue, and of bonds or notes being taken. This accords with the common custom of the country, which is to make sale of the property of deceased persons at auction, and receive payment part in cash, and part in bonds or notes on a short credit. It is clear that the testator did not intend to give the whole surplus of his personal estate to be equally divided among all his children, because immediately after the devise which is supposed to contain such a disposition, he declares his belief that there would be a surplus which would *overmount his prior bequeathments*, and proceeds to dispose of that surplus whether personal or real, not among all his children, but among part of them. There is a considerable inaccuracy in the devise to his sons. The expressions are, to my *four* sons whom I now name; and yet he goes on to name but *three* only. It is said to have been decided formerly by two judges of this court, that the three sons took as joint-tenants. That question not being now before us, I throw it altogether out of consideration, except so far as it may fairly be viewed as shedding light on the devise to the daughters. In that respect I do not think it of weight, as the devise to the daughters contains expressions, which cannot by any reasonable construction be controuled by the pre-

ceding devise. The testator gives one third of the surplus to his three daughters, naming them; but declares that *Mary Crosher's part* shall go, not to her, but to her children; this explanation makes the devise not to his daughter *Mary*, but immediately to her children. Both the *expressions*, and the *intent* of the devise, are inconsistent with a joint estate. In joint-tenancy there are no *parts*. All have an undivided interest in the *whole*. The moment you introduce the idea of *separation*, the fabric of joint-tenancy is dissolved. Any intimation by the testator of a *division* or a *severalty* of interests, is sufficient to make a tenancy in common. Now what must have been the intent in the present instance? It would be absurd to suppose that the testator knew any thing about the legal import of his words; but it is very clear, that he did not intend to give an equal right of survivorship, between his daughters *Margaret* and *Elizabeth* and the children of his daughter *Mary*. The children of *Mary* were to take *among them* one third of a third of the surplus; but *Margaret* and *Elizabeth* were to have *each* one third of a third. Consequently, if one of the children of *Mary* died, the interest of that one would go to his surviving brothers and sisters, to the exclusion of his aunts *Margaret* and *Elizabeth*. Thus the share belonging to the children of *Mary* must be considered as detached from the shares of their aunts, and this is to all intents and purposes a tenancy in common. But it has been urged, that whatever may be the case as to the children of *Mary*, there will be a joint-tenancy between *Margaret* and *Elizabeth*, because there is no intimation of several interests between them. To this argument I cannot accede. The joint-tenancy, if it exists at all, is created by the same devise which must be applied to all the devisees. There is no colour for contending that the testator meant to create a joint-tenancy between *Margaret* and *Elizabeth* only, and to give a separate interest to the children of *Mary*. On the contrary the fair conclusion is, that if there was a severalty as to one, there was a severalty as to the others. In other words, that this remaining third part of the surplus was to be divided into three parts, one of which was to go to *Margaret*, one to *Elizabeth* and one to the children of *Mary*. Whether those children took their portions in joint-tenancy, or in common as between themselves, I give no opinion. I am clear

that it was the testator's intent to divide the surplus in the manner I have mentioned, and that his expressions will warrant us in construing the will accordingly.

There remains to be considered the objection to the declaration in this cause. The suit is founded on an act of assembly by which an action of account render is given to a residuary legatee. We are bound to support the judgment, if possible, because the cause has been tried on its merits, and the legislature have shown great anxiety to overrule exceptions founded on matters of form, in the sixth section of the act " to regulate arbitrations and proceedings in courts of justice," passed the 21st of *March* 1806, 4 *Smith's Laws* 329. It appears by the declaration, that the summons was issued against *John Martin* and *Daniel Robertson*, executors of *William Robertson* deceased, and the process having been served on *Martin* only, the suit was carried on against him alone. This is according to the long established practice of our courts. The declaration sets forth that the defendant and the other executor who was not summoned, were the bailiffs and receivers for the said *Elizabeth Smith* of the real and personal estate of the said *William Robertson*, and received of the money of that estate 300*l.* &c. Perhaps the case might have been set out with more clearness, but enough is shown to bring it within the act of assembly on which the action is founded. It was contended by the counsel for the plaintiffs in error, that the conclusion was wrong, laying the injury " to the damage of the said *John Smith*" without adding " as executor of the said *Elizabeth Smith*." This objection has no weight. In actions brought by executors or administrators, the usual conclusion is to the damage of the plaintiff, without saying more.

I am of opinion that the judgment should be affirmed.

YEATES J. *William Robertson*, after devising his real estate, and bequeathing divers specific and pecuniary legacies, uses the following words in his will:—" I allow that my
" estate personal or real shall overmount these my bequeath-
" ments; that then the overplus shall fall to my four sons,
" whom I now name, *William*, *David*, and *Joseph Robertson*,
" two thirds. Item. I will that one third of the overplus to
" my three daughters *Margaret Carnahan* and *Elizabeth*

1812.

MARTIN
v.
SMITH.

" *Smith*, and *Mary Crosher*, *her part of that third to her* " *children*."

*Elizabeth Smith* died after his father, before his executors had settled their administration account; and the first question is, whether her share survived to her sister *Margaret* and the children of her sister *Mary*, or whether it vested in her husband *John Smith*, who had since taken out letters of administration on her estate?

There is no doubt, but that there may be joint-tenants of personalties; as where a horse is given to two, they are joint-tenants. But if one sells his share to another, this severs the joint-tenancy, and the vendee and the other person are tenants in common, and no survivorship. *Lit. sec.* 282. 321., 1 *Vern.* 482., 2 *Blackst.* 399. But joint undertakings in the way of trade or the like, are not liable to survivorship. 1 *Vern.* 217., 1 *Cha. Rep.* 31., 2 *Fonbla.* 106.

The properties of a joint estate are derived from its *unity*, which is fourfold, of *interest*, *title*, *time*, and *possession*. 2 *Bla.* 180. Joint-tenants are said to be seised *per my et per tout*, by the *half* or *moiety*, and by *all;* that is, they each of them have the entire possession, as well of every parcel, as of the whole. They have not one of them a seisin of one half or moiety, and the other of the other moiety; neither can one exclusively be seised of one acre and his companion of another; but each has an undivided moiety of the whole, and not the whole of an undivided moiety. *Ib.* 182., *Lit. sec.* 288. 5. *Co.* 10.

Joint-tenancies were formerly favoured at law, because they were against the division of tenures; but as tenures are many of them taken away, and in a great measure abolished, that reason ceases, and courts of law now incline against them, as much as is done in equity. They are a kind of estates that do not make provision for posterity. Chancery will decree in favour of a tenancy in common as much as it can. If indeed there are no words that will point at a tenancy in common, the rule of survivorship in a joint devise must take place; but a joint-tenancy will never be inferred, where a testator meant division. Hence it is that in wills, the words " equally to be divided," make a tenancy in common, according to the intent of the devisor, although they never make any partition *in facto;* for his intent appears, that it

shall be divided, and by consequence that there shall be no survivor. 3 *Co.* 39. *b.* So of the word "equally" alone, without other words. 3 *Atk.* 733. So of the word "alike," *Cowp.* 357, determined in 1775. And so also in other cases, where the word "among" or "between" has been used. It is laid down that the expressions "share and share alike" have been held these two hundred years to create a tenancy in common; by *Parker* justice. 2 *Atk.* 122.

The inaccuracy of language, as well as orthography of the will under consideration, clearly mark the drawer of it to be an illiterate person; but the intention of the testator as to the matter in controversy can readily be collected. When he "devised to his three daughters *Margaret Carnahan, Elizabeth Smith* and *Mary Crosher, her part* of that third to her children," one third of the surplus of his estate, he evidently points to a division between them. These words are synonimous to the expressions I have already cited, which have been held to create a tenancy in common. *Part* is the contrary of whole; and *Margaret, Elizabeth* and *Mary's* children (representing the mother) cannot be said to hold an undivided third part of the whole, when an undivided ninth part is plainly given to those children. I am therefore of opinion, that *Elizabeth* did not take in joint-tenancy under the true meaning of the will.

The plaintiff below had a good cause of action against the executors under the act of assembly "for the more easy "recovery of legacies" passed the 21st of *March* 1772, 1 *Dall. St. Laws* 631. The latter were individually bound to render an account to the former, and personally responsible to him, to the extent of the money received for him in right of his wife. This case is not analogous to those cases wherein it has been held, that an executor cannot be charged *as such* either for money had and received by him, money lent to him, or on an account stated of money due from him *as such*, those charges making him personally liable; nor to those other cases wherein such counts have been joined to other counts in assumpsit against executors, on promises made by the testator. When a balance is found due by auditors in account render, they are liable personally to that amount to the legatee.

1812.

MARTIN
v.
SMITH.

After a trial on the merits, the party comes too late to question the declaration for informality; but advantage should have been taken hereof by demurrer. I do not however see such defect in point of form, according to our usual method of declaring, where one of the defendants has not been taken or summoned on the original process. Here *Martin* was returned to be served with the summons, but *Robertson* was not to be found, and the declaration recites these facts specially, and proceeds against *Martin* alone. Mr. *Elder* appeared and pleaded that *he* was not the bailiff or receiver of *Elizabeth Smith*, and issue was joined thereupon. The defendant afterwards added, that *he* had fully accounted, upon which issue was also joined. Upon trial the jury found for the plaintiff 79*l.* 17*s.* 2*d.*, on which judgment was entered. Whether any agreement took place between the counsel, which justified the jury in finding a precise sum, or whether that sum was to be settled by auditors, remains to be determined upon our view of the original paper, which is referred to in the record before us.

BRACKENRIDGE J. gave no opinion, having been prevented by sickness from being present at the argument.

Judgment affirmed.